IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES A. CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-1855-K-BD |
| | § | |
| FLAGSTAR BANK, FSB, ET AL., | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

This mortgage foreclosure action has been referred to the United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. Pending before the Court are Defendants' Second Motion to Dismiss [Dkt. No. 10] pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's Motion For Leave to File An Amended Complaint [Dkt. No. 14]. For the reasons stated herein, Defendants' Second Motion to Dismiss should be GRANTED, and Plaintiff's Motion For Leave to File an Amended Complaint should be DENIED.

### Background

This is an action involving foreclosure of real property located at 628 Mulberry Lane, Desoto, Texas 75115 (the "Property") by Plaintiff Charles A. Caldwell, a citizen of Texas, against Defendants Flagstar Bank, FSB ("Flagstar"), a chartered federal savings bank with its principal place of business in Troy, Michigan, and Flagstar Bancorp., Inc., a Michigan corporation with its principal place of business in Troy,

Michigan. Plaintiff – who is an attorney who is proceeding *pro se, see* N.D. TEX. L. CIV. R. 83.14 ("Any party proceeding on the party's own behalf is considered pro se.") – originally filed a petition in state court (the "State Court Petition") asserting claims for (1) breach of contract; (2) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e); (3) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e); and (4) violations of the Dodd-Frank Act. Plaintiff also challenged Defendants' authority to foreclose on the Property. *See* Dkt. No. 1-5 at pp. 6-29. Defendants timely removed the case to federal court on the basis of diversity jurisdiction. *See* Dkt. No. 1 at 3.

Defendants then filed a motion to dismiss. *See* Dkt. No. 6. The Court denied the motion without prejudice and issued an order allowing Plaintiff to amend his complaint without seeking leave of the Court by July 16, 2012.[1] *See* Dkt. No. 7. Plaintiff failed to file an amended complaint by July 16, and Defendants filed the Second Motion to Dismiss on August 21, 2013. *See* Dkt. No. 10. Instead of substantively responding to Defendant's Second Motion to Dismiss, Plaintiff filed a Motion For Leave to File an Amended Complaint, as well as a proposed First Amended Complaint, which asserted the claims set forth in Plaintiff's State Court Petition, as well as an additional claim for violations of the Texas Debt Collection Act (TDCA), Texas Finance Code §§ 392.001 *et seq. See* Dkt. Nos. 12, 13, & 14. Defendants then filed a Response and Objection to

---

[1] United States Magistrate Judge Jeff Kaplan entered the prior order denying without prejudice Defendants' motion to dismiss. Effective November 21, 2012, this civil case was reassigned to the undersigned United States Magistrate Judge David L. Horan pursuant to Special Order 3-290.

Plaintiff's Motion For Leave to File an Amended Complaint under Rule 15(a), arguing that amendment would be futile. *See* Dkt. No. 16.

Plaintiff claims that he purchased a home and executed a deed of trust securing a loan (the "Loan") on the Property in favor of Aspire Financial, Inc., d/b/a TEXASLENDING.COM. Dkt. No. 12 at ¶ 6. A subsequent Deed of Trust, dated June 26, 2009, defines Flagstar as the Lender for the Loan, and the Deed of Trust was assigned to Flagstar on March 21, 2012.

Plaintiff acknowledges that he fell behind on his payments due under the Loan but claims that, on July 1, 2011, he entered into an oral agreement of forbearance (the "Oral Modification"), by which Defendants promised to waive Plaintiff's late payments and promised not to attempt to foreclose on the Loan while the Loan was in forbearance and by which Plaintiff promised to make higher monthly payments on the Loan – to $1,812, up from $1,254 – until the past due balance was paid. *See id.* at ¶ 7.

Plaintiff claims that he followed the terms of the Oral Modification, but, that on March 9, 2012, he received a notice of foreclosure stating that the Loan was being foreclosed on June 5, 2012. Plaintiff claims that on March, 15, 2012, Defendants returned a check tendered to Defendant for his March 1, 2012 payment and informed Plaintiff that the Loan was delinquent. *See id.* at ¶¶ 7-9.

Plaintiff claims that he called Flagstar and spoke with a representative named "Deanna," who told Plaintiff that the Loan was delinquent because he missed the December 2011 payment. Plaintiff claims that, although he informed the representative that he did not miss the December payment and that he had a receipt

for the payment, the representative responded that she could "only go by what my [computer] screen shows me." *Id.* at ¶ 9.

Plaintiff claims that, on May 31, 2012, he submitted a qualified written request to Defendants for information regarding the Loan, payment history, any transfers of ownership of the Loan, and accounting of all funds associated with the Loan. Plaintiff claims that Defendants failed to provide him with the requested information. *See id.* at ¶¶ 10-11.

Finally, Plaintiff claims that he has continued to tender payments to Defendants and that Defendants have returned all such payments. *See id.* at ¶ 13.

Defendants argue that Plaintiff's Motion For Leave to Amend the Complaint should be denied because the claims asserted in Plaintiff's proposed First Amended Complaint are futile. Defendants previously moved to dismiss Plaintiff's State Court Petition. Plaintiff had an opportunity to respond to Defendants' Second Motion to Dismiss or to substantively address Defendants' arguments for dismissal in Plaintiff's Motion For Leave to Amend the Complaint, but Plaintiff has failed to do so. The court therefore considers both motions without briefing from Plaintiff.

## Legal Standards

### Rule 15(a)(2) Standard

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g., Orthoflex,*

*Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and then by Rule 15(a)(2)."). Plaintiff filed his motion for leave prior to the November 9, 2012 deadline set in the Court's July 13, 2012 Order. *See* Dkt. Nos. 9, 12, 13, & 14.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant

has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

The Fifth Circuit has interpreted "futility" in the context of Rule 15 to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). To determine futility a court must apply the same standard as applies under Rule 12(b)(6). *Id.* And, while the general rule is that the Court should not dismiss a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend, the Court "need not permit futile amendments." *LaCroix v. Marshall County, Miss.*, 409 F. App'x 794, 802 (5th Cir. 2011).

<u>Rule 12(b)(6) Standard</u>

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim

for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). While, under Fed. R. Civ. P. 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Id.*

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a

document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988). However, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the Defendants have attached to their motion to dismiss a copy of the subsequent Deed of Trust, dated June 26, 2012 (the "6/26/2012 Deed of Trust"), and a copy of an Assignment of the Deed of Trust, dated March 21, 2012 (the "Assignment"). *See* Dkt. Nos. 6-1 & 6-2. These documents are a matter of public record that can be judically noticed in considering a 12(b)(6) motion. *See* FED. R. EVID. 201(b)(2) (a court

may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Because the documents attached to the motion to dismiss are matters of public record on file with the Dallas County Clerk's Office and therefore are subject to judicial notice, there is no need to convert Defendants' motion to dismiss into a motion for summary judgment.

Although both a Motion for Leave to Amend the Complaint and a Motion to Dismiss the Original Petition are currently pending, because the standards for deciding both are the same in this case, and the allegations in the State Court Petition and Plaintiff's proposed First Amended Complaint are essentially the same,[2] one analysis will suffice for both pending motions.

---

[2] Plaintiff's proposed First Amended Complaint asserts an additional claim for violations of the TDCA, and so the Court will only analyze that claim in connection with Plaintiff's Motion for Leave to Amend the Complaint.

## Analysis

<u>Defendants' Authority to Foreclose</u>

Plaintiff contends in his State Court Petition that Defendants "have failed to establish that they are the owners of the Loan or that they have been given authority of the holder of the Loan to foreclose on this loan." Dkt. No. 1-5 at ¶¶ 10, 13. Plaintiff makes the same argument, albeit in a more abbreviated form, in his proposed First Amended Complaint. Dkt. No. 12 at ¶ 12. In his State Court Petition, Plaintiff states that the Deed of Trust is prima facie evidence that Defendants are not holders of the security instrument and do not have the authority to foreclose. Dkt. No. 1-5 at ¶ 13.

Defendants, however, provide three independent bases for their authority to foreclose. First, Defendants correctly point out that Flagstar is defined as the Lender under the subsequent – and therefore controlling – 6/26/2009 Deed of Trust and that the 6/26/2009 Deed of Trust expressly grants the Lender the right to institute foreclosure proceedings in the event of a default. 6/26/2009 Deed of Trust at ¶ 18.

Second, Flagstar is the mortgagee of the Loan because Flagstar is the "last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4); *see* Assignment. Plaintiff does not dispute – nor can he – that a mortgagee possesses the authority to foreclose. *See Thomas v. Ocwen Loan Servicing, LLC*, No. 3:12-cv-447-L, 2013 WL 30653, at *4 (N.D. Tex. Jan. 3, 2013) ("The Texas Property Code permits either a mortgagee or mortgage servicer to administer a deed of trust or contract lien foreclosure without production of the original note.").

Third, Flagstar is the servicer of the Loan. As Plaintiff's pleadings acknowledge,

Plaintiff made his payments on the Loan to Flagstar. *See* Dkt. No. 12 at ¶¶ 7-10, 13. Under the Texas Property Code, "mortgage servicer" means "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *See* TEX. PROP. CODE § 51.0001(3). The law is clear that a mortgage servicer may administer the foreclosure of property regardless of whether it holds the underlying loan. *See, e.g.*, *Cervantes v. U.S. Bank National Assoc.*, No. 3:12-cv-661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (citing TEX. PROP. CODE § 51.0025).

As such, Plaintiff has failed to plead, and cannot possibly plead, that Defendants lacked authority to foreclose on the Property. *See Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) (leave to amend a second time is unnecessary where a plaintiff's alleged facts could not, as a matter of law, support the alleged claim, "[e]ven with every possible fact and inference resolved in favor of the plaintiff"); *Jacquez v. Procunier*, 801 F.2d 789, 791(5th Cir. 1986) (leave to allow a pro se plaintiff to amend is not required where "even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability" and it is clear that the plaintiff has already pleaded his "best case").

<u>Breach of Contract Claims</u>

Plaintiff bases his breach of contract claim on two theories: (1) Defendants breached the Oral Modification by attempting to foreclose during the forbearance period and (2) Defendants failed to keep an accurate accounting of Plaintiff's payments.

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. – Houston [14th Dist.] 2005, pet. denied)). Defendants argue that Plaintiff's breach of contract claim is subject to dismissal for several reasons, including that the Oral Modification is barred by the statute of frauds, the claim lacks factual support, and the Home Owners' Loan Act ("HOLA") preempts the claim.[3]

*(1) Defendants' Attempt to Foreclose on the Loan Allegedly in Violation of the July 1, 2011 Oral Modification Agreement.*

The statute of frauds requires that certain specified classes of contracts be in writing to be enforceable. TEX. BUS. & COM. CODE § 26.01. Pursuant to Section 26.02 of the Texas Business and Commerce Code, "[a] loan agreement in which the amount

---

[3] Because Plaintiff has failed to state a claim upon which relief can be granted, the Court is not required to address the more difficult question of whether his state law claims are preempted by the HOLA – an issue that has never been decided by the Fifth Circuit. *See, e.g., Hill v. Wells Fargo Bank, NA*, No. 4-11-CV-644-A, 2011 WL 5869730, at *2 n.3 (N.D. Tex. Nov. 17, 2011) (declining to address HOLA preemption argument where dismissal was proper on other grounds); *Hopkins v. Wells Fargo Bank, N.A.*, 3-10-CV-1857-D, 2011 WL 611664, at *3 n.5 (N.D. Tex. Feb.18, 2011) (same).

involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." *Id.* § 26.02(b). Section 26.02 defines "loan agreement" as:

> one or more promises, promissory notes, agreements, undertakings, security agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.

*Id.* § 26.02(a)(2). Section 26.02 further provides:

> (c) The rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement.
>
> (d) An agreement subject to Subsection (b) of this section may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement.

*Id.* § 26.02(c)-(d).

Under Texas law, oral modifications of a written contract subject to the statute of frauds are also subject to the statute of frauds if they materially alter the obligations imposed by the original contract. *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-cv-02347, 2012 WL 5363424-L (N.D. Tex. Oct. 31, 2012) (citing *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984)). "'An oral agreement to modify the percentage of interest to be paid, the amounts of installments, security rights, the terms of the remaining balance of the loan, the amount of monthly payments, the date of the first payment, and the amount to be paid monthly for taxes and insurance is an impermissible oral

modification." *Id.* (quoting *Horner*, 724 F.2d at 1148.) Agreements to modify an existing loan agreement include agreements to "forego or delay foreclosure" and are subject to the statute of frauds. *Id.*; *Krudop v. Bridge City State Bank*, No. 09-05-111, 2006 WL 3627078, at *4 (Tex. App. – Beaumont Dec. 14, 2006, pet. denied) ("Any agreement to forego or delay foreclosure ... would fall under the provisions of section 26.02(b), and be included under the definition of a 'loan agreement' in section 26.02(a)(2).").

Because Plaintiff's Loan was for $156,711.00, it is subject to the statute of frauds. Moreover, the Court determines that the Oral Modification, by which the parties allegedly purport to delay foreclosure in exchange for higher payments, is directly contrary to and materially alters Defendants' rights under the 6/26/2009 Deed of Trust to accelerate the maturity date of the Loan and foreclose on the Property. *See Rhodes*, 2012 WL 5363424, at *16. Thus, the Oral Modification is also subject to the statute of frauds and must be in writing to be enforceable since it materially alters the parties' obligations under the original loan agreement. Because the modification was oral and never reduced to writing, it is unenforceable. *See id.* Further, to the extent Plaintiff contends that a new oral agreement was created rather than a modification of the original loan, the statute of frauds would still apply. *See id.* As such, assuming that there was an oral agreement, Plaintiff's claims based on the Oral Modification are barred by the statute of frauds.[4]

---

[4] Although Plaintiff did not provide the Court with a substantive response to Defendants' Second Motion to Dismiss, and therefore did not argue the existence of any exceptions to the statute of frauds in this case, the Court independently considered whether the pleadings alleged either the promissory estoppel exception or the partial

*(2) Defendants' Alleged Failure to Keep an Accurate Accounting of Plaintiff's Payments.*

Defendants argue that Plaintiff's breach of contract claim is fatally flawed because Plaintiff has failed to show that he performed under the contract. Dkt. No. 16 at 5-6; Dkt. No. 10 at 9-10. Essentially, Defendants argue that Plaintiff acknowledges he performed under the unenforceable Oral Modification, rather than under the terms and conditions of his loan documents, and that the Deed of Trust expressly provides that the Lender may accelerate the debt and require immediate payment in full of all sums due under the Deed of Trust in the event of default. Dkt. No. 16 at 10. As such, Defendant asserts that, without any allegations by Plaintiff that the December 2011 payment consisted of the full amount due and owing under the loan or that he is not in default on the Loan, Defendants were acting pursuant to their rights under the Deed of Trust in rejecting the December 2011 payment. *Id.*

The Court agrees with Defendants' argument and notes that Plaintiff's allegations in his proposed First Amended Complaint concede that Plaintiff was in breach of the Deed of Trust because he failed to make scheduled payments due on the Loan. *See* Dkt. No. 12 at ¶ 7; *see Obuekwe v. Bank of America, N.A.*, No. 4:11-cv-762-Y,

---

performance exception. The Court concludes that neither exception applies. *See Hurd v. BAC Home Loans Servicing, LP*, 3:11-cv-1752-M, 2012 WL 1106932, at *10 (N.D. Tex. Mar. 29, 2012) ("To invoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds."); *Singh v. JP Morgan Chase Bank, N.A.*, No. 4:11-cv-607, 2012 WL 3904827, *4-*5 (E.D. Tex. July 31, 2012) (*rec. adopted*, 2012 WL 3904372 (E.D. Tex. Sept. 7, 2012) (in order to be enforceable under the partial performance exception, a loan modification must be supported by new consideration).

2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012) (dismissing breach of contract claim in foreclosure action where plaintiff admitted that she defaulted on the loan).

As such, Plaintiff has failed to plead, and cannot possibly plead, a claim for breach of contract. *See Brown*, 804 F.2d at 334-36; *Jacquez*, 801 F.2d at 791-92.

<u>Duty of Good Faith and Fair Dealing</u>

Plaintiff alleges that Defendants breached the duty of good faith and fair dealing implicit in every contract, and have therefore waived their right to foreclose. *See* Dkt. No. 12 at ¶ 15. Defendants argue that this claim should be dismissed because Texas law does not recognize a implied duty of good faith and fair dealing in the mortgage loan context. The Court agrees.

The Texas Supreme Court has declined to read an implied duty of good faith and fair dealing into every contract; rather, such duty arises only as a result of a "special relationship" between parties governed or created by contract. *Arnold v. National Cnty. Mut. Fire Ins.* Co., 725 S.W.2d 165, 167 (Tex. 1987). Texas courts have held that this requisite "special relationship" does not apply to relationships of mortgagor and mortgagee and lender and borrower. *See Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. – Dallas 1993, writ dism'd w.o.j.). As a result, claims for breach of the duty of good faith and fair dealing in the foreclosure context are routinely dismissed. *See, e.g., Rhodes v. Wells Fargo Bank*, No. 3:10-cv-02347, 2012 WL 5363424, at *25-*26 (N.D. Tex. Oct. 31, 2012).

Accordingly, Plaintiff has failed to plead, and cannot possibly plead, a claim for breach of the duty of good faith and fair dealing. *See Brown*, 804 F.2d at 334-36; *Jacquez*, 801 F.2d at 791-92.

Violations of the RESPA

Plaintiff asserts two separate violations of the RESPA: (1) Defendants failed to provide an accurate accounting in response to Plaintiff's qualified written request and (2) Defendants failed to accurately apply and account for all funds paid by Plaintiff towards the loan. Dkt. No. 12 at ¶¶ 11, 14.

*(1) The Qualified Written Request*

Section 2605 of the RESPA provides that, if a loan servicer receives a qualified written request from the borrower for information relating to the servicing of such loan, the servicer must provide a written response acknowledging the receipt of the correspondence within 20 days unless the action requested is taken within such period. *See* 12 U.S.C. § 2605(e)(1)(A). Additionally, the RESPA requires the servicer to take corrective action within 60 days of receiving the qualified written request, including crediting any late charges or penalties or conducting an investigation and providing the borrower with a written explanation of the reasons for the action and the name and telephone number of an employee of the servicer to whom the borrower can direct any further inquiry on the matter. *Id.* § 2605(e)(2). A plaintiff must allege actual damages resulting from a violation of Section 2605. *Id.* § 2605(f)(1)(A); *see also Hurd*, 2012 WL 1106932, at *18.

Section 2605 defines a "qualified written request" as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, ... that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] ... includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)B). The qualified written request must be related to the servicing of the loan. *Id.* § 2605(e)(1)(A). "Servicing" includes "any scheduled period payments from a borrower" or the "making of ... payments of principal and interest...." *Id.* § 2605(i)(3).

Plaintiff fails to sufficiently allege a communication meeting the requirements of a qualified written request. He alleges only that he submitted a request to Defendants "for information regarding Plaintiff's loan, payment history, any transfers of ownership of the loan and accounting of all funds associated with Plaintiff's loan." Dkt. No. 12 at ¶ 10. Plaintiff does not attach the correspondence to his proposed First Amended Complaint, nor does Plaintiff allege that the correspondence included information that enabled Defendants to identify the name and account of the borrower, that it included a statement of reasons for the belief that the account was in error, or that it provided Defendants with sufficient detail about the information sought. Neither has Plaintiff alleged any facts giving rise to a reasonable inference that he suffered actual damages from this alleged violation of the RESPA. *See Hurd*, 2012 WL 1106932, at *18 (dismissing RESPA claim where plaintiff failed to sufficiently allege

18

that they sent a communication meeting the requirements of a qualified written request and failed to make any allegation from which the court could conclude that they suffered loss or damages as a result of defendant's failure, if any, to respond to any written requests from plaintiff); *Hill v. Wells Fargo Bank, NA*, 2011 WL 5869730, at *3 (same).

As such, Plaintiff has failed to state a claim under RESPA in either his State Court Petition or his proposed First Amended Complaint. However, although this claim should be dismissed, Plaintiff should be permitted to replead it. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)). Because Plaintiff has not stated that he cannot, or is unwilling to, cure the defects that the Court has identified, Plaintiff should have the opportunity to file a Second Amended Complaint as to this claim.

*(2) Defendants Failed to Accurately Apply and Account for All Funds Paid by Plaintiff Towards the Loan.*

Defendants argue this RESPA claim fails for the same reason as the breach of contract claim – the Oral Modification is unenforceable, such that any failure by Defendants to apply Plaintiff's loan payments in accordance with the Oral Modification does not amount to a violation of RESPA. The Court agrees.

Plaintiff admitted in his proposed First Amended Complaint that he was behind in his payments on the Loan. Dkt. No. 12 at ¶ 7. As such, absent any allegations that the December 2011 payment constituted payment for the full amount due and owing under the Loan,[5] the 6/26/2009 Deed of Trust permitted Defendants to refuse any partial payment. 6/26/2009 Deed of Trust at ¶ 9; *see also Singha v. BAC Homes Loans Servicing, LP*, No. 4:10-cv-692, 2011 WL 7678684, at \*6 (E.D. Tex. June 1, 2011) (dismissing claim predicated on alleged refused payments, because "the Deed of Trust allows the Lender to return any payment or partial payment if the payment or partial payment is insufficient to bring the loan current").

Plaintiff has failed to plead, and cannot possibly plead, a violation of the RESPA based on Defendants' alleged failure to accurately apply and account for Plaintiff's payments. *See Brown*, 804 F.2d at 334-36; *Jacquez*, 801 F.2d at 791-92.

<u>Violations of the Federal Debt Collection Practices Act</u>

Plaintiff alleges that Defendants violated the FDCPA by failing to accurately apply and account for all funds paid by Plaintiff towards the Loan. Defendants assert that Plaintiff's FDCPA claim should be dismissed because Plaintiff has failed to allege – and cannot allege – that Defendants are debt collectors within the meaning of the statute.

---

[5] Plaintiff cannot allege that the December 2011 payment was for the full amount due and owing under the Loan because Exhibit C to the State Court Petition demonstrates that the alleged December 2011 payment was for $1,813.00, *see* Dkt. No. 1-5, which is the monthly payment agreed to by Plaintiff under the alleged Oral Modification, *see* Dkt. 12 at ¶ 7.

The FDCPA defines a "debt collector" as "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F). Section 1692a(6)'s legislative history indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (modified on other grounds, 761 F.2d 237) (citing S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698).

Plaintiff fails to make any allegations as to whether Defendants are debt collectors under the FDCPA. It appears from the face of the 6/26/2009 Deed of Trust that Flagstar is the Lender of the Loan and therefore a creditor of Plaintiff. As discussed above, Flagstar is also the mortgage servicer. Because neither creditors nor mortgage servicers are considered debt collectors within the meaning of the FDCPA, *Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed.Appx. 424, 428 n.1 (5th Cir. 2012) ("[M]ortgage lenders are not 'debt collectors' within the meaning of the FDCPA"); *Perry*, 756 F.2d at 1208 (holding that "a bona fide mortgage servicing company" is not a debt collector under the FDCPA), Plaintiff has failed to plead a claim under the FDCPA.

However, because the Loan must not have been in default when taken for servicing, *see Perry*, 756 F.2d at 1208; S.Rep. No. 95-382 at 1698, Plaintiff may be able to allege an FDCPA claim if Flagstar became the mortgage lender and servicer after the debt was in default. It appears from the filings that Flagstar became the mortgage lender and servicer on June 26, 2009, when the 6/26/2009 Deed of Trust was signed. *See* Dkt. No. 6-1. Plaintiff alleges that he entered into an oral agreement of forbearance with Defendants on July 1, 2011. *See* Dkt. 12 ¶ 7. Therefore, although it is unlikely that the Loan was in default prior to June 26, 2009, Plaintiff should have an opportunity to file a Second Amended Complaint as to this claim <u>if</u> he can state that the Loan was in default prior to June 26, 2009 and plead any other elements required for a FDCPA claim.

Although Defendants also moves to dismiss the FDCPA claim on the ground that any purported failure on its part was an omission to act, and thus not actionable under the statute, Defendants cite no case law for this proposition. Dkt. No. 16 at 9. In fact, Courts in neighboring districts have held than an omission may be the basis for a claim under the FDCPA. *See Stewart v. Alonzo*, No. C-08-347, 2009 WL 174938, at *2 (S.D. Tex. Jan. 26, 2009).

Finally, Defendants argue that "the refusal to accept payments is the antithesis of an act to collect a debt." Dkt. No. 16 at 9. Again, Defendants cite no case law. Without more, the Court cannot determine that Plaintiff cannot state a claim on this ground. Indeed, after allegedly refusing to accept Plaintiff's payment, Flagstar's agent sent Plaintiff a Notice of Acceleration Enclosing Notice of Substitute Trustee's Sale,

which stated: "THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT." Dkt. No. 1-5. And whether the initiation of foreclosure proceedings qualifies as collecting a debt under the FDCPA remains an open question in the Fifth Circuit. *See, e.g.*, *Brooks v. Flagstar Bank, FSB*, No. , 2011 WL 2710026, at *6 (E.D. La. July 12, 2011) (citing *Kaltenbach v. Richards*, 464 F.3d 524, 529 n.5 (5th Cir. 2006)).

<u>Violations of the Dodd-Frank Act</u>

Plaintiff asserts that the "Frank-Dodd Act, 12 U.S.C.A. § 1454 and § 1701P-1" requires Defendants to "accurately apply and account for all funds paid by the consumer regarding their mortgage loan." Dkt. No. 12 at ¶14. Although Plaintiff presumably means the Dodd-Frank Wall-Street Reform Act, the statutes cited by Plaintiff bear no relationship to that act. 12 U.S.C. § 1454 relates to the Federal Home Loan Mortgage Corporation (the "Corporation") and governs the Corporation's purchase and sale of mortgages. Section 1701P-1 concerns the Secretary of Housing and Urban Development's reporting to Congress. Neither provision relates to the allegations in the State Court Petition or the proposed First Amended Complaint. Thus, Plaintiff has failed to plead, and cannot possibly plead, a claim under 12 U.S.C.A. § 1454 or § 1701P-1. *See Brown*, 804 F.2d at 334-36; *Jacquez*, 801 F.2d at 791-92.

<u>Violations of the TDCA</u>

In the proposed First Amended Complaint, Plaintiff asserts that Defendants violated the TDCA by: (1) using a deceptive means to collect a debt in violation of Texas Finance Code § 392.304(a)(19) and (2) misrepresenting the character, extent, or amount of a consumer debt in violation of Texas Finance Code § 392.304(a)(8). Plaintiff premises these alleged violations on Defendants' refusal to accept Plaintiff's payments and Defendants' attempt to foreclose based on inaccurate accounting. Dkt. No. 12 at ¶ 16. Defendants urge dismissal of the TDCA claim based on the economic loss rule.

"In Texas, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *Id.* (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 13). "The focus of the rule is on determining whether the injury is to the subject of the contract itself." *Id.* (internal quotation marks omitted). The burden is on the plaintiff to establish evidence

of an independent injury. *See id.* (citing *Esty v. Beal*, 298 S.W.3d 298, 302 (Tex. App. – Dallas 2009, no pet.)).

Courts have applied the economic loss rule to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *5 (E.D. Tex. Dec.14, 2010) *rec. adopted* 2011 WL 675386 (E.D. Tex. Feb. 16, 2011) (explaining that the plaintiff's allegations of misrepresentation by attempting to collect a debt in violation of the agreement against CitiFinancial stated a breach of contract but not a TDCA claim); *Hicks v. Chase Home Fin. LLC*, No. 3:09-cv-1652-G, 2010 WL 4274745, at *7 (N.D. Tex. Oct.21, 2010) (judgment vacated following entry of agreed final judgment) (dismissing on summary judgment the plaintiff's claims against Chase under the TDCA for alleged misrepresentations of the amount of the debt and attempts to collect fees not authorized by the modification agreement because they sounded in contract); *Singh v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *rec. adopted*, 2012 WL 3891060 (E.D. Tex. Sep.7, 2012) (holding that because the Deed of Trust governed the conduct the plaintiff alleged violated the TDCA, the plaintiff could not recover under a tort theory).

In this case, both Plaintiff and Defendant Flagstar are parties to the 6/26/2009 Deed of Trust. Defendant's alleged refusal to accept Plaintiff's payment – the conduct that Plaintiff bases his claim on – is governed by the Deed of Trust. "This is a breach of contract claim cloaked in the lexicon of the TDCA" and "would convert every breach

of contract into a TDCA claim." *Hicks*, 2010 WL 427474, at *7. Therefore, the Court concludes that Plaintiff has failed to plead, and cannot possibly plead, a claim under the TDCA. *See Brown*, 804 F.2d at 334-36; *Jacquez*, 801 F.2d at 791-92.

### Recommendation

Plaintiff's Motion for Leave to File an Amended Complaint [Dkt. No. 14] should be DENIED, and Defendants' Second Motion to Dismiss [Dkt. No. 10] should be GRANTED. Plaintiff's claims asserting that Defendants lacked authority to foreclose, breach of contract, violation of the duty of good faith and fair dealing, and violations of the Dodd-Frank Wall-Street Reform Act should be dismissed with prejudice, and Plaintiff's claims for a violation of the Real Estate Settlement Procedures Act based on failure to respond to a qualified written request and violations of the Fair Debt Collection Practices Act should be dismissed without prejudice. As to these claims that should be dismissed without prejudice, the Court should grant Plaintiffs 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

26

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 4, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE